NEW YORK STATE NATIONAL OR-GANIZATION FOR WOMEN, et al, Plaintiffs–Appellees,

City of New York, Plaintiff–Intervenor–Appellee,

v.

Randall A. TERRY, Operation Rescue, et al, Defendants–Appellants,

B.O.R.N., Jesse Lee, Joseph Foreman, et al, Respondents–Appellants,

Reverend James P. Lisante, et al, Defendants.

No. 477, Docket No. 97—7217.

United States Court of Appeals, Second Circuit.

Argued Nov. 19, 1997.

Decided Oct. 21, 1998.

Martha F. Davis, New York, NY (Rocio L. Cordoba, NOW Legal Defense and Education Fund, New York, NY; Karen L. Hagberg, James M. Bergin, Jamie A. Levitt, Morrison & Foerster LLP, New York, NY; Barbara Olshanski, Center for Constitutional Rights, New York, NY, On the Brief) for Plaintiffs–Appellees.

Joseph P. Secola, New Milford, CT (John F. Sweeney, Michael O. Cummings, Morgan & Finnegan, L.L.P., New York, NY; Gabriel P. Kralik, Fish & Richardson, P.C., New York, NY; Michael P. Tierney, Legal Center for Defense of Life, New York, NY; A. Lawrence Washburn, New York, NY, On the Brief) for Defendants–Appellants and Respondents–Appellants.

Before: KEARSE, LEVAL, and FRIEDMAN,* Circuit Judges.

LEVAL, Circuit Judge:

Plaintiffs are a group of women's organizations, health care clinics, and abortion providers who brought a civil rights action against an anti-abortion organization, its leader, and anti-abortion protestors. The district court, which had earlier enjoined defendants from engaging in various actions in violation of plaintiffs' rights and had found the defendants in contempt for violation of the injunction, granted plaintiffs' motion to reinstate the earlier finding of contempt, and imposed coercive fines. The fines were subject to an opportunity for defendants to purge themselves of contempt and be relieved of the obligation to pay the fines by obeying the injunction and publicly declaring their intention to comply with the injunction. The

---

* The Honorable Daniel M. Friedman, Senior Circuit Judge for the Federal Circuit, Washington, D.C., sitting by designation.

court also granted plaintiffs' motion to reinstate its award of attorney's fees to plaintiffs for prevailing on their contempt motions and civil rights claim.

On appeal from the finding of contempt with coercive fines and the award of attorney's fees, defendants argue that (1) the contempt sanctions should be vacated for mootness because defendants have not violated the injunctions in over seven years or because of the enactment of the Freedom of Access to Clinic Entrances Act of 1994, 18 U.S.C. § 248 (the "FACE Act"); (2) the fines, notwithstanding the opportunity to purge, are a criminal penalty that may not lawfully be imposed because defendants were not afforded procedural protections required by the Constitution for criminal proceedings; (3) attorney's fees awarded to plaintiffs for prosecuting contempt motions were improperly reinstated; (4) attorney's fees awarded to plaintiffs under 42 U.S.C. § 1988 were improperly reinstated; and (5) the motion for reinstatement of sanctions was time-barred.

We affirm.

## BACKGROUND

Plaintiffs brought this action in the Supreme Court of New York on April 25, 1988, seeking declaratory and injunctive relief to restrain defendants[1] from blocking access to medical facilities that provided abortions during a series of protests planned for April 30 through May 7, 1988. The complaint alleged eight separate causes of action: violations of New York Civil Rights Law § 40–c and New York Executive Law § 296; public nuisance; interference with the business of medical facilities; trespass; infliction of emotional harm on patients and employees of medical facilities; tortious harassment of patients and employees of medical facilities; false imprisonment of patients and employees of medical facilities; and conspiracy to deny women seeking abortion or family planning services the equal protection of the laws and equal privileges and immunities, in violation of 42 U.S.C. § 1985(3).

On April 28, 1988, Justice Cahn of the Supreme Court issued a temporary restraining order that did not expressly enjoin defendants from blocking access to abortion clinics.

On May 2, 1988, following a demonstration outside a Manhattan abortion clinic, Justice Cahn issued a second temporary restraining order that enjoined defendants from "trespassing on, blocking, obstructing ingress into or egress from any facility at which abortions are performed in the City of New York, Nassau, Suffolk, or Westchester Counties from May 2, 1988 to May 7, 1988." The following day, May 3, defendant Terry and other protestors violated the order during a demonstration outside a Queens abortion clinic. At a hearing that afternoon before Justice Cahn, defendants removed to federal district court.

On May 4, 1988, the district court adopted a modified version of Justice Cahn's second temporary restraining order. The new temporary restraining order (the "TRO") included coercive sanctions of $25,000 for each day defendants violated the order and required defendants to notify the City of New York in advance of the location of any demonstrations. After defendants violated this TRO on May 5–6, 1988, plaintiffs sought contempt sanctions in accordance with the TRO. The district court adjudged Operation Rescue and Terry in civil contempt of the May 4 Order held them jointly and severally liable for a $50,000 fine. *See New York State Nat'l Org. for Women v. Terry*, 697 F.Supp. 1324, 1338 (S.D.N.Y.1988), *aff'd as modified*, 886 F.2d 1339 (2d Cir.1989)("*Terry I*"), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990).

In response to defendants' publicized plan to carry out more protests on October 28, 29, and 31, 1988, plaintiffs moved to modify the TRO to cover those dates. The district court granted plaintiffs' motion and converted the TRO into a preliminary injunction. In spite of the injunction, on October 29, 1988, hundreds of Operation Rescue protestors blocked access to clinics at two covered locations.

---

1. Unless otherwise indicated, "defendants" refers to defendants-appellants, non-party respon-dents-appellants, and defendants who did not appeal.

When defendants threatened to block access again on January 12–14, 1989, plaintiffs moved for summary judgment on their claims under 42 U.S.C. § 1985(3) and New York law, and for a Permanent Injunction. The district court granted summary judgment for plaintiffs on their § 1985(3) claim. *New York State Nat'l Org. for Women v. Terry*, 704 F.Supp. 1247, 1258–60 (S.D.N.Y. 1989), *aff'd as modified*, 886 F.2d 1339 (2d Cir.1989)("*Terry I*"), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990). The judgment permanently enjoined defendants from

> trespassing on, blocking, or obstructing ingress into or egress from any facility at which abortions are performed in the City of New York, Nassau, Suffolk, or Westchester counties [and] physically abusing or tortiously harassing persons entering, leaving, working at, or using any services at any facility at which abortions are performed in the City of New York, Nassau, Suffolk, or Westchester counties.

*Terry I*, 886 F.2d at 1345 n. 1, *aff'g* 704 F.Supp. at 1263. The Permanent Injunction also established a schedule of prospective coercive civil sanctions for future violations, providing that

> the failure to comply with this Order by any Operation Rescue participant with actual notice of the provisions of this Order shall subject him or her to civil damages of $25,000 per day for the first violation ... each successive violation of this Order shall subject the contemnor to a civil contempt fine double that of the previous fine ... each contemnor shall be jointly and severally liable for all attorneys' fees and related costs incurred by plaintiffs in relation to enforcement of this Order.

*Id.* We affirmed summary judgment for plaintiffs and the Permanent Injunction. *Terry I*, 886 F.2d at 1357–64.

In subsequent civil contempt proceedings, the district court found that defendants had violated the TRO, preliminary injunction, and Permanent Injunction ("the district court's orders") on four separate dates: May 6, 1988, October 29, 1988, and January 13–14, 1989. *See New York State Nat'l Org. for Women v. Terry*, 732 F.Supp. 388, 398 (S.D.N.Y.1990). The court fined defendant Terry and Operation Rescue, jointly and severally, $100,000 and fined defendant Thomas Herlihy $25,000. Several non-party respondents who acted in concert with defendants [2] were also fined, including B.O.R.N. ($25,000), Jesse Lee ($100,000), Joseph Foreman ($25,000), Michael McMonagle ($25,000), Jeff White ($25,000), Michael La Penna ($25,000), Florence Talluto ($50,000), Adelle Nathanson ($25,000), and Robert Pearson ($25,000). *See* 732 F.Supp. at 413–14.

The district court also awarded plaintiffs attorney's fees for prevailing on their contempt motions and their civil rights claim. *See New York State Nat'l Org. for Women v. Terry*, 737 F.Supp. 1350, 1363, 1367 (S.D.N.Y.1990). We affirmed the contempt judgments and attorney's fees against all defendants and all but two [3] non-party respondents. *See New York State Nat'l Org. for Women v. Terry*, 961 F.2d 390, 401 (2d Cir.1992)("*Terry II*").

Defendants then petitioned for a writ of certiorari based on the Supreme Court's grant of certiorari in *Bray v. Alexandria Women's Health Clinic*, 498 U.S. 1119, 111 S.Ct. 1070, 112 L.Ed.2d 1176 (1991), a case involving similar facts. Following its decision in *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993), the Supreme Court granted certiorari, vacated the contempt fines and attorney's fees in a memorandum decision, and remanded the case to the Second Circuit for further consideration. *See Pearson v. Planned Parenthood Margaret Sanger Clinic (Manhattan)*, 507 U.S. 901, 113 S.Ct. 1233, 122 L.Ed.2d 640 (1993). On remand, we reinstated the contempt fines and attorney's fees, stating that applications for relief in light of *Bray* should be addressed in the first instance to the district court. *See New York*

---

**2.** Under Fed.R.Civ.P. 65(d), civil contempt sanctions may be assessed against nonparties with actual notice of the order who acted in concert with defendants in violating an order.

**3.** Contempt judgements against non-party respondents Florence Talluto and Michael LaPenna were reversed for lack of personal jurisdiction. *See Terry II*, 961 F.2d at 400.

*State Nat'l Org. for Women v. Terry,* 996 F.2d 1351, 1352 (2d Cir.1993)("*Terry III* ").

Defendants again sought a writ of certiorari on the ground that the contempt fines were criminal in nature (and could be imposed only with criminal procedural protections) and presented the same issue as was before the Supreme Court in *International Union, United Mine Workers of America v. Bagwell,* 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994)("*Bagwell* "). Certiorari was granted, and the decision of the Court of Appeals was vacated and remanded for further consideration in light of *Bagwell. See Pearson v. Planned Parenthood Margaret Sanger Clinic (Manhattan),* 512 U.S. 1249, 114 S.Ct. 2776, 129 L.Ed.2d 888 (1994).

On remand, we vacated the contempt fines and remanded the case for further proceedings in light of *Bagwell. See New York State Nat'l Org. for Women v. Terry,* 41 F.3d 794, 796, 797 (2d Cir.1994)("*Terry IV* "). We also vacated plaintiffs' award of attorney's fees for the contempt motions, and instructed the district court to reconsider in light of *Bray v. Alexandria Women's Health,* 506 U.S. 263, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993), its award of attorney's fees under 42 U.S.C. § 1988. *See Terry IV,* 41 F.3d at 797.

Plaintiffs then moved the district court for orders that would reinstate the contempt findings and the coercive fines, subject to an opportunity for defendants to purge themselves. Plaintiffs also sought attorney's fees. The district court rejected defendants' contention that the case had been rendered moot by the absence of violations of the Permanent Injunction during the previous seven years or by the enactment of the FACE Act, 18 U.S.C. § 248. *See New York State Nat'l Org. for Women v. Terry,* 952 F.Supp. 1033, 1039 (S.D.N.Y.1997). The court reinstated the fines. It ordered "coercive civil penalties" payable to the United States, subject to a "purge provision" under which defendants could avoid both the contempt holding and the penalties if they obeyed the injunction and, within sixty days, published an Affirmation of intent to abide by its terms. *See id.* at 1046; Order Amending and Reinstating Judgments, March 21, 1997, *New York State Nat'l Org. for Women v. Terry,* 952 F.Supp.

1033 (S.D.N.Y.1997), at 2–3. The court also reinstated its award of attorney's fees to plaintiffs for prosecuting contempt motions and for prevailing on their civil rights claim. *See* 952 F.Supp. at 1044, 1046. Defendants appeal.

### DISCUSSION

#### I. Mootness

Defendants contend that the case should have been dismissed as moot on the ground that no violations of the Permanent Injunctions have occurred in over seven years and that recent federal legislation protecting abortion clinics, the FACE Act, 18 U.S.C. § 248, renders the Permanent Injunction unnecessary.

 Mootness arises when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969). An originally justiciable issue may abate if "(1) it can be said with assurance that there is no reasonable expectation ... that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (citations and internal quotation marks omitted). The burden to demonstrate mootness "is a heavy one." *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). A litigant must demonstrate that it is *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 66, 108 S.Ct. 376, 386, 98 L.Ed.2d 306 (1987).

 Defendants have not met their burden under this test. Although defendants have not violated the Permanent Injunction in "over seven years", the violations were persistent and ceased only when the district court imposed significant coercive fines. *Cf.* 732 F.Supp. at 413–14 (imposing fines). Voluntary cessation of illegal conduct does not

necessarily render the controversy moot. *See W.T. Grant Co.,* 345 U.S. at 632, 73 S.Ct. at 897; *see also United States v. Generix Drug Corp.,* 460 U.S. 453, 456, 103 S.Ct. 1298, 1300, 75 L.Ed.2d 198 (1983); *Government of Virgin Islands v. Virgin Islands Paving, Inc.,* 714 F.2d 283, 285 (3d Cir.1983). In particular, voluntary cessation of misconduct does not engender mootness where the cessation resulted from a coercive order and a threat of sanctions. *See Vitek v. Jones,* 445 U.S. 480, 487, 100 S.Ct. 1254, 1260, 63 L.Ed.2d 552 (1980); *see also Allee v. Medrano,* 416 U.S. 802, 810, 94 S.Ct. 2191, 2198, 40 L.Ed.2d 566 (1974). The mere passage of time since the previous violation does not compel the conclusion that the injunction and contempt fines are no longer necessary; it is equally possible that the defendants' compliance with the district court's orders is attributable to the penalties they face in the event of violation. Moreover, defendants have failed to state an intention to abide by the Permanent Injunction in the future. *See* 952 F.Supp. at 1039. Thus, it is by no means absolutely clear that defendants' violations of the district court's orders "could not reasonably be expected to recur." *Gwaltney,* 484 U.S. at 66, 108 S.Ct. at 386. The record offers no assurance that, if sanctions were lifted, the defendants would not "return to [their] old ways" of violating the court's orders. *W.T. Grant Co.,* 345 U.S. at 632, 73 S.Ct. at 897. Indeed, plaintiffs assert they have evidence showing that abortion clinics in New York continue to experience frequent physical obstruction of patients' access. *See* 952 F.Supp. at 1039.

Defendants rely on *County of Los Angeles v. Davis,* 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979), but that case is inapposite. In *Davis,* a district court permanently enjoined the use of a racially discriminatory hiring examination in a county Fire Department, and the county sought dismissal on mootness grounds. The Supreme Court held the case was moot because there was no reasonable expectation that the county would ever use an invalidated civil service exam where the county had considered using the exam only because there had been a temporary shortage of firefighters—a unique situation that was no longer present and was

unlikely to recur. *See id.* at 632, 99 S.Ct. at 1383. Moreover, there was no suggestion by either party that the county would attempt to use the invalidated examination in the event the injunction was dissolved. *See id.* at 632–33, 99 S.Ct. at 1383–84. Here, by contrast, the situation that prompted the invalidated protest activity—women seeking abortions—is ongoing and will continue indefinitely. Thus, it is not absolutely clear that violations are unlikely to recur. *See Gwaltney,* 484 U.S. at 66, 108 S.Ct. at 386.

Defendants also contend that the passage of the FACE Act, 18 U.S.C. § 248, which forbids the types of activities that the district court enjoined, also moots the action. It does not for at least two reasons. The defendants engaged in the conduct that justified the finding of contempt notwithstanding an injunction forbidding it. There is no reason to suppose that the defendants are more likely to obey a statute than they were to obey the court's order. Furthermore, the maintenance of the action is justified by the fact that defendants were alleged (and ultimately found) to have violated plaintiffs' rights. There was a viable case in controversy when the suit was initiated. An initially ripe case or controversy does not cease to be justiciable merely because the defendants stop violating the plaintiffs' rights.

It cannot be said that by reason of the enactment of the FACE Act, "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Davis,* 440 U.S. at 631, 99 S.Ct. at 1383.

II. Motion for Reinstatement of Contempt Fines

In *Terry IV* we vacated, in light of *International Union, United Mine Workers of America v. Bagwell,* 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994)("*Bagwell*"), the district court's contempt fines, which were imposed without constitutional criminal procedural protections, and which did not include an opportunity for defendants to purge their contempts. *See Terry IV,* 41 F.3d 794, 797 (2d Cir.1994). In response to our remand instructions, *see id.,* the district court

reinstated the fines, subject to an opportunity to purge. We now must determine if the reinstated fines are consistent with *Bagwell,* which held that defendants were entitled to a criminal jury trial where defendants had "no opportunity to purge [the fines] once imposed," and the circumstances led the Court to conclude that the purpose of the fines was criminal punishment. *See* 512 U.S. at 837–38, 114 S.Ct. at 2562. Defendants argue that the fines, even though subject to a purge provision, are nonetheless a punishment.

■ *Bagwell* involved fines levied against a labor union for violations of an injunction, which prohibited the union from, among other things,

> obstructing ingress and egress to company facilities, throwing objects at and physically threatening company employees, placing tire-damaging "jackrocks" on roads used by company vehicles, and picketing with more than a specified number of people at designated sites.

*Id.* at 823, 114 S.Ct. at 2555. The injunction also required the union to "take all steps necessary to ensure compliance with the injunction, to place supervisors at picket sites, and to report all violations to the court." *Id.* at 823–24, 114 S.Ct. at 2555. After a series of non-jury contempt proceedings, at which violations were proven beyond reasonable doubt, the trial court levied approximately $12 million in compensatory fines [4] payable to the aggrieved parties and $52 million in non-compensatory fines payable to the Commonwealth of Virginia and the two counties most seriously affected by the unlawful activity. *Id.* at 824, 114 S.Ct. at 2555–56.

■ Whether a contempt is criminal or civil turns on the character and purpose of the sanction. Civil contempt fines seek one of two objectives. One is coercion—to force the contemnor to conform his conduct to the court's order. The second is compensation. Where the contumacious conduct has caused injury to the beneficiary of the court's order, a civil fine may be imposed on the contemnor to compensate the victim for the loss or harm caused by the unlawful conduct. Criminal

fines, by contrast, are intended primarily to punish the contemnor and vindicate the authority of the court. *See Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 441–42, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911), *cited in Bagwell,* 512 U.S. at 827–28, 114 S.Ct. at 2557; *see also Penfield Co. v. Securities & Exchange Comm'n,* 330 U.S. 585, 590, 67 S.Ct. 918, 921, 91 L.Ed. 1117 (1947).

Several factors contributed to the Court's conclusion that the noncompensatory fines in *Bagwell* were criminal in purpose and could be imposed only through a criminal jury trial. First, the trial court's order imposing the fines included no purge provision enabling defendants to avoid fines by compliance with the court's order. *See Bagwell,* 512 U.S. at 837, 114 S.Ct. at 2562; *Mackler Productions, Inc. v. Cohen,* 146 F.3d 126, 129 (2d Cir. 1998). In reaching this conclusion, the Court drew on a line of cases in which it had found sanctions to be civil where "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus 'carries the keys of his prison in his own pocket.'" *Bagwell,* 512 U.S. at 828, 114 S.Ct. at 2558, *quoting Gompers,* 221 U.S. at 442, 31 S.Ct. at 498; *see also United States v. United Mine Workers,* 330 U.S. 258, 305, 67 S.Ct. 677, 702, 91 L.Ed. 884 (1947) (stating that a fine would be coercive, rather than punitive, where it was "condition[ed] on the defendant's failure to purge itself within a reasonable time"); *Hicks v. Feiock,* 485 U.S. 624, 632, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721 (1988)("a fine that would be payable to the court is . . . remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order."); *Shillitani v. United States,* 384 U.S. 364, 370–71, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966)(noting that when a court confines until compliance a witness refusing to testify at judicial proceedings, the "conditional nature of the imprisonment—based entirely upon the contemnor's continued defiance—justifies holding civil contempt proceedings absent the safeguards of indictment and jury"). The absence of a purge provision

---

4. Compensatory fines paid to the aggrieved party for losses sustained are civil. *See Bagwell,* 512 U.S. at 829, 114 S.Ct. at 2558.

was significant because it suggested the trial court's objective was not to coerce but to punish. A purge provision permits the contemnor to escape a fine by conforming his conduct to the court's order or by declaring an intention to do so. The absence of a purge provision means that the fine will be imposed regardless of reform and commitment to obey. A fine without a purge provision therefore suggests an intention to punish past misconduct rather than to insure future lawfulness.

Other factors that helped persuade the *Bagwell* Court that the $52 million in fines in that case were of a punitive, criminal character were that (1) they were not "calibrate[d]" to damages caused by the contumacious activities, 512 U.S. at 834, 114 S.Ct. at 2561, (2) that they were payable to the Commonwealth and the counties, 512 U.S. at 824–25, 114 S.Ct. at 2556, rather than to the injured party, and (3) that they were extremely large, amounting to $52 million, 512 U.S. at 837–38 & n. 5, 114 S.Ct. at 2562 & n. 5. *See Mackler*, 146 F.3d at 129. The failure to calibrate the fines to the injuries inflicted on the victims of the contumacious conduct rebutted the inference that the fines were designed to compensate the victims. Similarly, the fact that the $52 million in fines in *Bagwell* were payable to the Commonwealth of Virginia and the counties, rather than to the victims, made unmistakably clear that their purpose was not to compensate. The enormous size of *Bagwell* fines, especially where all other factors pointed to a punitive, rather than a coercive or compensatory purpose, emphasized the need for the protection of the defendant in the adjudication process, reinforcing the conclusion that criminal procedures were required.

 The consideration of these factors in the context of this case leads to the conclusion that these fines are civil in nature, because their purpose is coercion. The district court's modified contempt order includes a purge provision that excuses defendants from paying contempt fines if, within 60 days from the date of the court's order, they file and publish an affirmation of their intent to abide by the Permanent Injunction. *See* Order Amending and Reinstating Judgments, *New York State Nat'l Organization for Women v. Terry*, 952 F.Supp. 1033 (S.D.N.Y.1997), at 2–3. Thus, the district court's modified order gives defendants an "opportunity to purge [the fines] once imposed." *Bagwell*, 512 U.S. at 837, 114 S.Ct. at 2562; *see also People v. Operation Rescue National*, 80 F.3d 64, 68 n. 7 (2d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 85, 136 L.Ed.2d 42 (1996) ("Under *Bagwell*, a noncompensatory fine is civil, and thus may ordinarily be imposed in the absence of a criminal trial 'only if the contemnor is afforded an opportunity to purge.' ").

This purge provision is similar to the provision in *United States v. United Mine Workers*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947)("*United Mine Workers* "), that the Supreme Court treated as a model civil fine in *Bagwell*. *See Bagwell*, 512 U.S. at 830 & n. 4, 114 S.Ct. at 2558 & n. 4 (noting, in reference to purge provision in *United Mine Workers*, that "the conduct required of the union to purge the suspended fine was relatively discrete"); *id.* at 829, 114 S.Ct. at 2558 (*United "Mine Workers* ... held that fixed fines also may be considered purgable and civil when imposed and suspended pending future compliance."); *see generally id.* at 829–30, 114 S.Ct. at 2558–59. In *United Mine Workers*, a union was found guilty beyond reasonable doubt of both criminal and civil contempt and was fined $3.5 million for violating a temporary order that restrained it from terminating the 1946 Krug–Lewis labor agreement,[5] encouraging miners to interfere with the operation of the mines, and interfering with the jurisdiction of the court. *United Mine Workers*, 330 U.S. at 266–67, 269, 67 S.Ct. at 682–84. The Court converted $2.8 million of the fine into a coercive civil fine with a purge provision. *See id.* at 305, 67 S.Ct. at 702; *see also Bagwell*, 512 U.S. at 830, 114 S.Ct. at 2558 (characterizing this portion of the fine as "civil"). The union could avoid the fine if, within five days of the

---

5. The agreement addressed relations between the United States government, which was operating a major portion of the country's bituminous coal mines, and the United Mine Workers of America. *United Mine Workers*, 330 U.S. at 262–63, 67 S.Ct. at 680–81.

issuance of the mandate, it showed that it had fully complied with the district court's temporary restraining order and preliminary injunction by (1) withdrawing unconditionally its notice of termination of the Krug–Lewis agreement and any other notice implying the agreement was not in full force, and (2) notifying its members of the withdrawal of these notices. *United Mine Workers,* 330 U.S. at 305, 67 S.Ct. at 702. Similarly, the purge provision in the instant case enables contemnors to avoid their fines if they formally affirm their intention to abide by the Permanent Injunction and publish that intention. The presence of the purge provision tends strongly to support the conclusion that the fines are coercive rather than punitive, and thus civil rather than criminal. The inclusion of the purge provision means that, if the defendants conform their conduct, they escape all obligation to pay the fines. It is therefore clear that punishment for past wrongdoing is not the objective of the fines, but rather coercion of the defendants to conform their conduct to the court's order.

To be sure, that the fines are not calibrated to the harm caused by the defendants' conduct, and are payable to the United States, argues against a conclusion that the fines are intended as compensatory; but this is irrelevant in this case because there is no contention that the fines are intended as compensatory. Those facts are no more indicative of a punitive intent than of an intent to coerce compliance. They are equally compatible with either. By its inclusion of the purge provision, the district court clearly indicated its intent that the fines serve a coercive, rather than a punitive, purpose.

And as for the size of the fines, while they are large enough to warrant concern with the adjudication process, they are nonetheless fully consistent with the court's coercive objective. The size of these fines does not compel the conclusion that the fines are punitive and criminal in the face of the strong indications that the fines are designed to coerce compliance with the court's order, and may be escaped by defendants if they conform their conduct. We conclude they were not imposed as a punishment.

We reject defendants' argument that this imposition of fines represents a finding of criminal contempt as opposed to civil contempt for the purpose of coercion.

Defendants argue that we should follow the result of *National Org. for Women v. Operation Rescue,* 37 F.3d 646 (D.C.Cir.1994)(*"Operation Rescue"*), in which the D.C. Circuit, applying *Bagwell,* held that noncompensatory contempt fines were criminal, and that defendants were entitled to the protections of criminal procedure, where the contempts involved out-of-court disobedience to a complex injunction. 37 F.3d at 660–61. There is a crucial difference, however. The order imposing contempt fines in *Operation Rescue* did not afford contemnors "an opportunity to purge," *Bagwell,* 512 U.S. at 829, 114 S.Ct. at 2558. *See* 37 F.3d at 649–50, 661–63.

Defendants also argue that the purge provision is punitive and therefore criminal in nature because it forces defendants to humiliate themselves by publicly confessing wrongdoing. Defendants cite an Eleventh Circuit case in which a purge provision that allowed contemnors to avoid fixed fines by "taking out ads in several newspapers confessing wrongdoing" was held to be "punitive in nature." *In re E.I. DuPont De Nemours & Company–Benlate Litigation,* 99 F.3d 363, 369 n. 6 (11th Cir.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 263, 139 L.Ed.2d 190 (1997). This order does not require a confession of wrongdoing. The publication of the Affirmation and Explanatory Letter requires statement of an indisputable fact—that "the contemnor has been held in contempt for violating [district court orders]," coupled with statement that "the contemnor has agreed to comply with the Permanent Injunction in the future." *See* Order Amending and Reinstating Judgments, at 2. The holding of *DuPont* is not pertinent.

### III. Attorney's Fees for Prosecuting Contempt Motions

When we vacated the district court's original contempt fines as inconsistent with *Bagwell,* we also vacated the attorney's fees awarded to plaintiffs for prosecuting contempt motions. *Terry IV,* 41 F.3d at 797 (2d

Cir.1994). The district court reinstated the fees upon its reinstatement of the contempt fines. 952 F.Supp. at 1043–45.

■■■■■ A finding that a condemnor's misconduct was willful strongly supports granting attorney's fees and costs to the party prosecuting the contempt. *See Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir.1996); *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir.1979); *see also Hutto v. Finney*, 437 U.S. 678, 689, 98 S.Ct. 2565, 2573, 57 L.Ed.2d 522 (1978)("a losing litigant's bad faith may justify an allowance of fees to the prevailing party"). The district court found ample evidence that the various defendant and respondent contemnors had violated its orders willfully. *See* 732 F.Supp. at 409.

The district court's reinstatement of its award of attorney's fees to plaintiffs for its prosecution of contempt motions was within its discretion. *See Weitzman*, 98 F.3d at 720 ("[T]rial courts enjoy considerable discretion in determining the appropriate amount of attorney fees.").

IV. Attorney's Fees Under 42 U.S.C. § 1988

Under our mandate in *Terry IV, see* 41 F.3d at 797, the district court reconsidered, in light of *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993), its award of § 1988 attorney's fees to plaintiffs for prevailing on their civil rights claim under 42 U.S.C. § 1985(3). *See* 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of section[ ] ... 1985 ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs."). In *Bray*, the Supreme Court held that women seeking abortions did not constitute a qualifying class for the purposes of 42 U.S.C. § 1985(3). *Id.* at 269, 113 S.Ct. at 759. Because plaintiffs were not entitled to

relief under § 1985(3), they were "also not entitled to attorney's fees and costs under 42 U.S.C. § 1988." *Id.* at 285, 113 S.Ct. at 767–68. The Court therefore vacated the award of fees. *Id.* The D.C. Circuit reached the same result in *Operation Rescue*, 37 F.3d at 653–54.

■■■■■ In this case, the district court properly reinstated plaintiffs' award of § 1988 attorney's fees. *See New York State Nat'l Org. for Women v. Terry*, 952 F.Supp. 1033, 1045–46 (S.D.N.Y.1997). *Bray* does not affect the district court's grant of judgment for plaintiffs on their § 1985(3) claims because that holding, *see* 704 F.Supp. 1247, 1263 (S.D.N.Y.1989), *aff'd Terry I*, 886 F.2d at 1359, had become final before *Bray* was decided in 1993.[6] Thus, plaintiffs had conclusively prevailed on their claim under § 1985(3) before the Supreme Court decided *Bray*. The judgment in plaintiffs' favor under § 1985(3) was not on direct review in *Terry IV*. Because plaintiffs were prevailing parties under § 1985(3), they were entitled to an award of attorney's fees under § 1988. This was not affected by the fact that, after the judgment in their favor under § 1985(3) became final, new law declared by the Supreme Court would have made them ineligible for a new judgment under § 1985(3).

In this respect, the present case differs decisively from *Bray* and *Operation Rescue*. In those cases plaintiffs' status as prevailing parties under § 1985(3) had not yet been finally adjudicated. Those judgments were on direct review, and were subject to reversal. *See Bray*, 506 U.S. at 269, 113 S.Ct. at 759; *Operation Rescue*, 37 F.3d at 653–54. Plaintiffs in those cases were not entitled to § 1988 attorney's fees because, unlike these plaintiffs, the reversals of their judgments deprived them of their status as "prevailing parties" under § 1985(3). These plaintiffs, by contrast, were conclusively adjudicated to be prevailing parties under § 1985(3).

---

6. Defendants' petition for a writ of certiorari had already been denied. *See Terry v. New York State National Organ. Women*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990). When a writ of certiorari is denied, the judgment below stands under the doctrine of res judicata "even if a new theory of law [is] thought up." *Brown v. Allen*, 344 U.S. 443, 543, 73 S.Ct. 397, 428, 97 L.Ed. 469 (1953)(Jackson, J., concurring); *see also Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981)(res judicata consequences of a final, unappealed judgment are not "altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case").

■ It is true the award of attorney's fees was on direct review when *Bray* was decided, and therefore is subject to the retroactive application of any new rule of law announced therein. *See Harper v. Virginia Dep't of Taxation,* 509 U.S. 86, 97, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 (1993)(holding that when Supreme Court applies a new rule of federal law, that rule "must be given full retroactive effect in all cases still open on direct review"). *Bray,* however, did not announce a new rule of law with respect to awards of § 1988 attorney's fees. Its new rule related to entitlement to prevail under § 1985(3). There is a presumption that successful civil rights litigants should recover reasonable attorney's fees unless special circumstances would render such an award unjust. *See Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983); *DiFilippo v. Morizio,* 759 F.2d 231, 234 (2d Cir.1985).

■ The district court found that there were no circumstances that would render the award of attorney's fees to the prevailing plaintiffs unjust. The district court relied in part on Congress's enactment, in response to *Bray,* of the Federal Access to Clinic Entrances Act of 1994, which substantially reestablishes the cause of action the Supreme Court had invalidated in *Bray, see* 18 U.S.C. § 248; H.R. Rep. 103–306, 103d Cong., 1st Sess.1993, *reprinted in* 1994 U.S.C.C.A.N. 699; *see also* 952 F.Supp. at 1046, and provides for awards of reasonable attorney's fees to prevailing plaintiffs aggrieved by, *inter alia,* the physical obstruction of abortion clinics. *See* 18 U.S.C. § 248(c)(1)(B). We believe this decision was within the district court's discretion.

Although, absent the new enactment, the peculiar circumstances of this case—a final judgment confirming plaintiff's status as the prevailing party followed by a Supreme Court decision in another case invalidating the theory on which plaintiffs prevailed— might make unjust the subsequent award of attorney's fees to plaintiffs who would no longer be entitled to prevail on their theory, that potential unfairness is overcome by the new act. The passage of the statute substantially undermined any claim that special circumstances render an attorney's fee award unjust in this case, for Congress has clearly provided that plaintiffs in these circumstances may prevail against illegal abortion clinic blockades and are entitled to attorney's fees. Because defendants have not shown special circumstances that would render the fees awarded in this case unjust, we find that the district court did not abuse its discretion in awarding the fees. *See Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941 ("[T]he district court has discretion in determining the amount of a [§ 1988] fee award.").

■ We therefore affirm the district court's reinstatement of plaintiffs' § 1988 attorney's fees.[7]

## V. Statute of Limitations

■ Plaintiffs' motion for reinstatement of the contempt fines was not time-barred. Statutes of limitations do not apply to motions on remand, which are continuations of prior proceedings. *See, e.g., Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 351–52, 108 S.Ct. 614, 620, 98 L.Ed.2d 720 (1988)(where federal question jurisdiction is lacking, it is preferable to remand rather than dismiss so that statute of limitations will not apply); *Mozee v. American Commercial Marine Serv. Co.,* 963 F.2d 929, 940 (7th Cir.1992)(stating that remand does not require the district court to begin an entirely new proceeding).

Plaintiffs moved to reinstate the contempt fines after we remanded in *Terry IV. See Terry IV,* 41 F.3d at 797. Thus, plaintiff's motion is not time-barred.

---

7. In connection with their argument on § 1988 attorney's fees, defendants argue that plaintiffs have "judicially admitted" that *Terry IV* retroactively applied *Bray* to reopen and collaterally attack the *Terry I* judgment. This argument relies on a misunderstanding of the nature of judicial admissions, which are statements of fact rather than legal arguments made to a court. *See* M. Graham, Federal Practice and Procedure § 6726 (Interim ed.1992); *United States v. McKeon,* 738 F.2d 26, 33 (2d Cir.1984). Plaintiffs' statements of their theory of the case do not constitute judicial admissions.

## VI. CONCLUSION

For the foregoing reasons, the district court's reinstatement of its order adjudging defendants in contempt and imposing non-compensatory contempt fines, subject to an opportunity for defendants to purge their contempt, is affirmed. The district court's reinstatement of its order awarding plaintiffs attorney's fees for prosecuting contempt motions and for prevailing on their civil rights claim, is also affirmed.