*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0372p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

DEJA VU OF NASHVILLE, INC., a Tennessee
corporation; JERRY C. PENDERGRASS, et al.,
                                    *Plaintiffs-Appellees,*

            *v.*

THE METROPOLITAN GOVERNMENT OF NASHVILLE
AND DAVIDSON COUNTY, TENNESSEE,
                                    *Defendant-Appellant.*

No. 03-6521

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
Nos. 97-01066; 97-01176—Todd J. Campbell, District Judge.

Argued: April 20, 2005

Decided and Filed: August 31, 2005

Before: BOGGS, Chief Judge; ROGERS, Circuit Judge; SHADUR, District Judge.[*]

———————

## COUNSEL

**ARGUED:** Francis H. Young, METROPOLITAN DEPARTMENT OF LAW, Nashville, Tennessee, for Appellant. Bradley J. Shafer, SHAFER & ASSOCIATES, Lansing, Michigan, for Appellees. **ON BRIEF:** Francis H. Young, James L. Charles, Paul J. Campbell, II, METROPOLITAN DEPARTMENT OF LAW, Nashville, Tennessee, for Appellant. Bradley J. Shafer, Andrea E. Adams, SHAFER & ASSOCIATES, Lansing, Michigan, for Appellees.

    SHADUR, D. J., delivered the opinion of the court, in which BOGGS, C. J., joined. ROGERS, J. (pp. 8-9), delivered a separate dissenting opinion.

———————

[*] The Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

1

---

## OPINION

---

SHADUR, District Judge.  Nearly eight years ago Deja Vu[1] first challenged Chapter 6.54 of the Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro") Code of Laws on First and Fourteenth Amendment grounds.  That challenge has generated a lengthy and convoluted history that includes an earlier visit to this Court in 2001 ("*Deja Vu I*," 274 F.3d 377)--so that "deja vu" provides a particularly appropriate label for this second appeal, which concerns the district court's award of attorneys' fees and expenses pursuant to 42 U.S.C. § 1988.[2]  We affirm.

Enacted on August 19, 1997, Chapter 6.54 required both (1) "sexually oriented" businesses to obtain operating licenses and (2) performers in such businesses to obtain permits.  Deja Vu sought to enjoin its enforcement shortly after enactment.  In their initial motion for injunctive relief, the original Deja Vu plaintiffs argued that Chapter 6.54 was unconstitutional because it did not provide prompt judicial review.  On December 8, 1997 the district court agreed and entered a preliminary injunction.  But almost a year later that injunction was dissolved in response to Metro's amendments to Chapter 6.54.  Deja Vu appealed.

Two weeks later, on December 17, 1998, Deja Vu filed in the district court a second motion for a preliminary injunction that asserted its previously preserved constitutional claims.  Metro responded in two ways:  first by assuring the court that certain provisions would be severed and that others would be "subject to a limiting construction," and then by notifying the court that 92 amendments to the ordinance had been enacted.  Even so, Deja Vu's motion was granted on October 4, 1999, with Metro being enjoined from enforcing Chapter 6.54 in its entirety.  Some ten weeks later the preliminary injunction was made permanent.  Although Metro appealed that order, it also enacted further amendments to the ordinance to address the constitutional infirmities identified by the district court.  Metro then appealed again when the district court denied its Fed. R. Civ. P. 60(b) motion to dissolve the injunction based on the new amendments.

In *Deja Vu I* we addressed all of the substantive issues preserved for appeal by both Deja Vu and Metro.  We concluded (1) that the injunction against enforcement of Chapter 6.54 should remain in effect because that Chapter's judicial review provisions were constitutionally inadequate and (2) that the statutory definition of "sexually oriented" was unconstitutionally broad but readily severable.  Rehearing and rehearing en banc were denied on February 5, 2002, and the Supreme Court denied certiorari on May 13, 2002 (535 U.S. 1073).

Deja Vu has filed Section 1988 motions for attorneys' fees on four separate occasions during the pendency of the action.  Its first effort was an interim motion for fees based on its claimed "prevailing party" status as to the initial motion for preliminary injunction.  That motion was eventually deemed a final application for fees after the district court entered the permanent injunction, and Deja Vu followed that entry with a second application based on its success on the second motion for injunctive relief.  After we decided *Deja Vu I*, Deja Vu filed a third motion for

---

[1]Originally Deja Vu of Nashville, Inc. filed suit together with Michael Rucker, Michael Butler, Merony Entertainment, Inc. (d/b/a Ken's Gold Club), The Pleasure Palace, Inc., Dawn Pierce and Elizabeth Martz.  Later added as plaintiffs as a result of case consolidation were Jerry Pendergrass, 421 Corporation and 822 Corporation.  For the sake of simplicity, this opinion will refer to the collectivized plaintiffs as Deja Vu (treated as a singular noun).

[2]All further citations to provisions of Title 42  will take the form "Section --."

fees associated with the appeal. And after the Supreme Court denied certiorari, Deja Vu filed its fourth and final motion.

Deja Vu's first three motions were considered together by the magistrate judge, who recommended that the motions be granted but did not recommend a specific award amount. That recommendation was approved by the district court on December 6, 2002, as was the parties' stipulation that the magistrate judge's findings, if upheld, called for an award of $431,099.56. Later the magistrate judge recommended that the fourth motion for $46,870 in fees also be granted and that Deja Vu's motion for costs and expenses (to which Metro had failed to respond) be granted in the amount of $58,565.66. Those recommendations were approved by the district court on September 30, 2003. Metro now appeals the combined award of $536,535.22.

### *Approval of the Fee Award*

When a case is brought under of Section 1983, as this one has been, Section 1988 provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Although "may allow" has a permissive ring to it, the Supreme Court has read it as mandatory where the plaintiff prevails and special circumstances are absent (*see, e.g., Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989)). As to the determination of "prevailing party" status, *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999)(most citations omitted) has reconfirmed this circuit's standards:

> To be a "prevailing party," a party must "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." In *Farrar v. Hobby*, 506 U.S. 103, 113 (1992), the Court explained that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties . . . in a way that directly benefits the plaintiffs." The Supreme Court has rejected a "central issue test" which would require a party to succeed on the main issue of the litigation to be considered "prevailing." Rather, a party who partially prevails is entitled to an award of attorney's fees commensurate to the party's success.

In its current appeal Metro raises essentially three objections to the fee awards. First, it argues that the Supreme Court's decision in *City of Littleton v. Z.J. Gifts*, 541 U.S. 774 (2004), which was decided after the fees were awarded, has stripped Deja Vu of its status as a "prevailing party." Second, it contends that even if Deja Vu is still properly considered a "prevailing party," *Z.J. Gifts* introduces "special circumstances" that render an award of fees unjust. Third, it advances the fallback position that even if Deja Vu is properly viewed as a "prevailing party" and even if no "special circumstances" exist, the specific amounts awarded by the district court were excessive and should be modified downward. For the reasons discussed here, we find none of those arguments persuasive.

### *"Prevailing Party" Status*

It is beyond dispute that as of the dates that the attorneys' fees awards were entered, Deja Vu was a prevailing party under the well-established standards for such awards. After all, the net result of the litigation was the entry of a permanent injunction barring enforcement of Chapter 6.54. That certainly qualifies as an enforceable judgment on the merits that "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiffs" (*Farrar*, 506 U.S. at 111-12).

Metro understandably raises no serious objection along those lines. Instead it argues that the intervening decision in *Z.J. Gifts* has changed the legal landscape so that Deja Vu can no longer be considered a "prevailing party." Specifically, Metro contends that the only justifiable basis for a conclusion that Deja Vu was the prevailing party in the litigation is its success on its first motion for injunctive relief because its success on the second motion was de minimis. And because Metro views *Z.J. Gifts* as eviscerating the basis for Deja Vu's success on the first injunction, it concludes that Deja Vu is left without a predicate for prevailing party status.

On that score Metro's position misunderstands the effect that new decisions have on appeals such as this one. *Harper v. Virginia Department of Taxation*, 509 U.S. 86, 97 (1993) requires that new Supreme Court rulings "must be given full retroactive effect in all cases still open on direct review." As Metro would have it, the pendency of this appeal renders the entire controversy between it and Deja Vu "on direct review," so that any new rule announced in *Z.J. Gifts* would be applicable to our disposition here because of *Harper*.

But because *Harper* is limited to cases "still open on direct review," it is important to understand just what is meant by that language. In that respect the Supreme Court has long recognized a distinction between cases "on direct review" and those involving collateral attack on a final judgment (*see, e.g., Bradley v. Sch. Bd. of the City of Richmond*, 416 U.S. 696, 710-11 (1973)). As to the latter category, judgments become final when "the availability of appeal has been exhausted and lapsed, and the time to petition for certiorari has passed" (*id.* at 711 n.14). Under that standard the December 1999 entry of a permanent injunction against the enforcement of Chapter 6.54 certainly qualified as a final judgment: It was affirmed by this court, and the Supreme Court then denied certiorari.

So *Harper* does not apply as to the injunctive relief that Deja Vu obtained against Metro. Instead the *Harper* principle applies only to the issue that is currently "on direct appeal": the award of attorneys' fees. Metro is entitled to the benefit of any new Supreme Court ruling as to that issue, but *Z.J. Gifts* contains no such ruling (nor does any other case). Hence our analysis as to Deja Vu's qualification as the "prevailing party" is unaffected. Deja Vu conclusively prevailed on its claim under Section 1983 when that claim became final, and it is therefore entitled to "prevailing party" status despite any later changes in the law as announced by the Supreme Court. Non-prevailing parties in civil rights actions cannot, by the simple act of filing a much later appeal from a fee award to which the prevailing party is entitled, artificially extend the time that they are beneficiaries of new Supreme Court rulings beyond the time at which the judgment against them has become final.

Our view of *Harper* is consistent with that of the Second Circuit. *New York State National Organization for Women v. Terry*, 159 F.3d 86 (2d Cir. 1998) reviewed an award of attorneys' fees stemming from a Section 1985(3) claim. As here, the Supreme Court had decided a case that arguably reached the merits of the underlying claim after the final judgment but before the disposition of the appeal as to the fee award. But because the Section 1985(3) judgment was final (and so not on direct review), the plaintiff's right to attorneys' fees under Section 1988 was held to be unaffected (*id.* at 96-97):

> Because plaintiffs were prevailing parties under § 1985(3), they were entitled to an award of attorney's fees under § 1988. This was not affected by the fact that, after the judgment in their favor under § 1985(3) became final, new law declared by the Supreme Court would have made them ineligible for a new judgment under § 1985(3).

\*          \*          \*

It is true the award of attorney's fees was on direct review when *Bray [v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993)] was decided, and therefore is subject to the retroactive application of any new rule of law announced therein. *See Harper* [, 509 U.S. at 97]. *Bray*, however, did not announce a new rule of law with respect to awards of § 1988 attorney's fees. Its new rule related to entitlement to prevail under § 1985(3).

In short, *Z.J. Gifts* cannot upset Deja Vu's status as a prevailing party on its Section 1983 claim. That status became final when the Supreme Court denied certiorari at the earlier stage of this case, and *Harper* does not expose the Section 1983 determination to new Supreme Court developments. Rather, if *Z.J. Gifts* is to affect the fee award at all, it must do so as a "special circumstance" that renders the award unjust.

*Special Circumstances*

Even a prevailing party may not be entitled to attorneys' fees if "special circumstances would render such an award unjust" (*Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)). But little guidance has been provided by the Supreme Court as to precisely what constitutes a special circumstance that would defeat a fee award, and we have recently opted for a case-by-case approach rather than adopting a "predetermined formula" (*Wikol ex rel. Wikol v. Birmingham Pub. Schs. Bd. of Educ.*, 360 F.3d 604, 611 (6th Cir. 2004)). In that case-by-case inquiry, the burden is on the non-prevailing party to make a strong showing that "special circumstances warrant a denial of fees" (*Morscott, Inc. v. City of Cleveland*, 936 F.2d 271, 273 (6th Cir. 1991)(citation omitted)).

Metro contends that the decision in *Z.J. Gifts* is the basis for such a showing. To support that notion, it points to a dictum in the Second Circuit's opinion in *Terry*, 159 F.3d at 97:

> [T]he peculiar circumstances of this case -- a final judgment confirming plaintiff's status as the prevailing party followed by a Supreme Court decision in another case invalidating the theory on which plaintiffs prevailed -- might make unjust the subsequent award of attorney's fees to plaintiffs who would no longer be entitled to prevail on their theory.

That language hardly provides a firm footing for Metro here. To begin, even if the "peculiar circumstances" described existed here (as they plainly do not), *Terry* would suggest only that an award of fees *might* be unjust. But that concept gives Metro no comfort, for *Terry*'s "peculiar circumstances" are simply not present in this case.

Indeed, in *Z.J. Gifts* the Supreme Court expressly rejected Metro's view that only prompt judicial access is required. Instead it specifically held that a prompt judicial decision was also necessary. Thus, discussing its earlier opinion in *FW/PBS, Inc. v. Dallas*, 493 U.S. 215 (1990), the Court concluded (*Z.J. Gifts*, 541 U.S. at 781)(citations omitted)):

> A delay in issuing a judicial decision, no less than a delay in obtaining access to a court, can prevent a license from being "issued within a reasonable period of time." Nothing in the opinion suggests the contrary. Thus we read that opinion's reference to "prompt judicial review," together with the similar reference in Justice Brennan's separate opinion (joined by two other Justices), as encompassing a prompt judicial decision. And we reject the city's argument to the contrary.

To be sure, *Z.J. Gifts* went on to find that ordinary state review procedures will often be--and in the particular case at issue there they were--constitutionally adequate. But that does not foreclose

the result that was reached by the district court in this case under very different circumstances.[3] No "special circumstances" or "peculiar circumstances" exist here such as to call for the adoption of a sort of revisionist history that would cause counsel's services, which were compensable when rendered, to be made noncompensable because of a later development that was triggered by those very services.

*Determination of Fees and Costs*

Finally, we must consider Metro's objections to the specific fee amounts awarded. Essentially Metro contends that the magistrate judge did not adequately account for Deja Vu's limited success on the second motion for injunction.

On that score *Wilson-Simmons v. Lake County Sheriff"s Department*, 207 F.3d 818, 823 (6th Cir. 2000) (echoing *Hensley*) has reconfirmed our prior teaching:

> In light of a district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters, an award of attorneys' fees under § 1988 is entitled to substantial deference.

Hence we review awards of attorneys' fees for abuse of discretion, which exists only when a district court "relies upon clearly erroneous factual findings, applies the law improperly, or uses an erroneous legal standard" (*Wikol*, 360 F.3d at 611).

Metro has presented no basis for any such finding here. Prevailing parties who obtain excellent results--as Deja Vu surely did here, and repeatedly so--are generally entitled to a "fully compensatory fee" (*Hensley*, 461 U.S. at 435). In that context we have repeatedly rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed-- as *Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1169 (6th Cir. 1996)(citation omitted) has said:

> However, a court should not reduce attorney fees based on a simple ratio of successful claims to claims raised. When claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced.

And that approach is wholly consistent with *Hensley*, 461 U.S. at 435 (citation and footnote omitted):

> In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good

---

[3]That is particularly true given our conclusion in *Deja Vu I*, 274 F.3d at 400-03, that Metro's judicial review provisions failed to meet even a lesser requirement of judicial access because they relied on a discretionary writ of certiorari and thus might lead to no judicial review at all. That distinguishes this case from the circumstances of *Z.J. Gifts* itself. Metro points out that the Tennessee common law writ of certiorari has since been altered to require judicial review in First Amendment cases, although its counsel admitted during oral argument that the alteration was the direct result of this litigation. We express no view as to whether that change in state procedure eliminates the concerns that we expressed in *Deja Vu I*. But even if it did, that kind of responsive change cannot create a special circumstance sufficient to defeat an award of attorneys' fees. In that respect, the dissent's statement that the ordinance "has been [constitutional] all along"--but "with two qualifications"--glosses over the fact that the most critical of those "qualifications" is the very factor that the law of the case (and hence the continued need for lawyering on Deja Vu's part) held to be a constitutional deficiency: the then-existing purely discretionary potential for judicial review.

faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing the fee. The result is what matters.

Because the result secured by Deja Vu--a final judgment that permanently enjoined the enforcement of Chapter 6.54--cannot fairly be labeled as anything short of excellent, it is entitled to a fully compensatory fee. Indeed, the magistrate judge's report and recommendation discounted the fee award by a significant amount to account for the limited success of Deja Vu's second motion, a decision that could perhaps have arrived at a different destination. Because there was no cross-appeal, we have no occasion to review the propriety of that reduction. But there is certainly no basis for Metro to seek a further reduction beyond that already ordered.

## Conclusion

Despite the somewhat contorted history of this case, the ultimate impact of the litigation initiated by Deja Vu is beyond dispute: Almost continuously since the lawsuit was initiated, Metro has been permanently enjoined from enforcing the entire Chapter 6.54. That constitutes a legally sanctioned change in the relationship between the two parties more than ample to justify Deja Vu's "prevailing party" status. *Z.J. Gifts* does not affect that status, nor does it introduce any special circumstances that would render an award of fees unjust. Deja Vu is therefore entitled to an award of fees, and nothing about the amount awarded by the district court represents an abuse of discretion.

Accordingly we AFFIRM the district court's awards of fees and costs.

---

### DISSENT

---

Rogers, Circuit Judge, dissenting.  In my view, in light of *Z.J. Gifts*, the award of fees should be reconsidered.

If ever "exceptional circumstances" warrant denial of fees to a prevailing party, it is when that party had prevailed by obtaining injunctive relief that the party clearly was, in retrospect, never entitled to.  That is largely, but not entirely, the case here.  *Z.J. Gifts* makes clear that the ordinance at issue is presently constitutional,[1] and, with two qualifications, has been all along.  The *Z.J. Gitfts* opinion did not "change" the law like a new statute, but made clear what the law is and has been.[2] *See Z.J. Gifts*, 541 U.S. at 780-81 (applying prior Supreme Court opinions).

The two qualifications are (1) the discretionary nature of judicial review prior to the amendment of the judicial review statute in 2002, and (2) the severable statutory definition of "sexually oriented."  While an award of fees may be warranted on a "catalyst" theory for the statutory modification that made judicial review mandatory,[3] such a theory should be ruled upon in

---

[1] As the majority notes, the Tennessee common law writ of certiorari has been altered to require judicial review in First Amendment cases.  *See* Majority Opinion at n.3; TENN. CODE ANN. § 27-9-111(e) (2002).  In *Z.J. Gifts*, the Supreme Court held that "Colorado's ordinary 'judicial review' rules offer adequate assurance, not only that *access* to the courts can be promptly obtained, but also that a judicial *decision* will be promptly forthcoming."  541 U.S. at 781. Because the ordinance at issue is now subject to ordinary judicial review in Tennessee courts, it is constitutional under *Z.J. Gifts*.

[2] As Justice Harlan clearly explained, the Supreme Court "announce[s] new constitutional rules . . . only as a correlative of our dual duty to decide those cases over  which we have jurisdiction and to apply the Federal Constitution as one source of the matrix of governing legal rules."  *Mackey v. United States*, 401 U.S. 667, 678-79 (1971) (Harlan, J., concurring and dissenting).  Justice Harlan criticized "[t]he notion that cases before us on direct review need not be adjudicated in accordance with those legal principles governing at the time we are possessed of jurisdiction in the case." *Id.* at 679-80.  The Supreme Court explained in *Harper v. Virginia Department of Taxation*, 509 U.S. 86, 97 (1993),

> When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule. . . .  "[t]he Court has no more constitutional authority in civil cases than in criminal cases to disregard current law or to treat similarly situated litigants differently." *American Trucking* [*Ass'ns v. Smith*, 496 U.S. 167], at 214 (Stevens, J., dissenting).

509 U.S. at 97.

[3] Indeed, the Tennessee General Assembly explained the amendment in terms of this court's prior ruling:

> WHEREAS, The United States Court of Appeals for the Sixth Circuit held that Tennessee Code Annotated, Section 27-9-111(e), allows state courts discretion as to whether or not to issue a writ of certiorari and hear an appeal from a decision by a board or commission revoking, suspending or denying a license or permit required prior to engaging in conduct protected by the First Amendment to the Constitution of the United States; and

> WHEREAS, The United States Court of Appeals for the Sixth Circuit further held that since the grant of the writ of certiorari remains discretionary in such cases, that Tennessee Code Annotated, Section 27-9-111(e), does not guarantee the petitioner prompt judicial review of the board's or commission's

the first instance by the district court, independently of the injunctive relief that now in light of *Z.J. Gifts* appears unwarranted.[4] The only remaining qualification to the legal invalidity of the injunctive relief is the definition of "sexually oriented," a victory so Pyrrhic that it cannot support a substantial award of fees in this case. I would remand for reconsideration, taking into account the substantial invalidity (in light of *Z.J. Gifts*) of the broad injunctive relief that forms the basis for determining that counsel achieved "excellent results" in this case.

---

decision, as is required by the First Amendment to the Constitution of the United States; now therefore,

. . .

Section 27-9-111, is amended . . . .

2002 TENN. PUB. ACTS 615.

[4]The district court dissolved the injunction on April 27, 2005. Deja Vu's appeal of that order was recently docketed in this court.