RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0225p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

—————————————

BART MCQUEARY,

            *Plaintiff-Appellant,*

    *v.*

JACK CONWAY, Attorney General of the
Commonwealth of Kentucky,

            *Defendant-Appellee.*

No. 09-5807

> Appeal from the United States District Court
> for the Eastern District of Kentucky at Frankfort.
> No. 06-00024—Karen K. Caldwell, District Judge.

Argued:  April 22, 2010

Decided and Filed:  July 29, 2010

Before:  GUY, BOGGS and SUTTON, Circuit Judges.

—————————————

**COUNSEL**

**ARGUED:** William E. Sharp, AMERICAN CIVIL LIBERTIES UNION OF KENTUCKY, Louisville, Kentucky, for Appellant.  Tad Thomas, OFFICE OF THE KENTUCKY ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee. **ON BRIEF:**  William E. Sharp, David A. Friedman, AMERICAN CIVIL LIBERTIES UNION OF KENTUCKY, Louisville, Kentucky, for Appellant.  Tad Thomas, Lisa K. Lang, OFFICE OF THE KENTUCKY ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee.

—————————————

**OPINION**

—————————————

SUTTON, Circuit Judge.  In 2006, Bart McQueary challenged the validity of a Kentucky law placing limits on protests at military funerals, claiming that the law violated his free-speech rights under the First and Fourteenth Amendments. The district court granted McQueary's motion to enjoin enforcement of the law on a preliminary basis, soon after which Kentucky repealed the relevant provisions of the statute.  The Commonwealth's

1

voluntary repeal of the law, the parties now agree, mooted McQueary's § 1983 action. Yet the parties take sides over whether, in the aftermath of the Commonwealth's repeal of the law, McQueary is a "prevailing party" eligible for attorney's fees under § 1988.

I.

In March 2006, the Kentucky legislature added three misdemeanors to its criminal code, all designed to discourage protests by the Westboro Baptist Church, whose members have become known for staging anti-homosexual protests at military funerals—a practice that McQueary's attorney acknowledges is "controversial (and offensive to many)," R.43 at 7. *See* 2006 Ky. Laws Ch. 50–51; *Snyder v. Phelps*, 580 F.3d 206, 211–12 (4th Cir. 2009), *cert. granted*, 130 S. Ct. 1737 (2010). In full, the three new misdemeanors read as follows:

> A person is guilty of disorderly conduct in the first degree when he or she:
>
> > (a) In a public place and with intent to cause public inconvenience, annoyance, or alarm, or wantonly creating a risk thereof:
> >
> > > 1. Engages in fighting or in violent, tumultuous, or threatening behavior;
> > > 2. Makes unreasonable noise; or
> > > 3. Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose; and
> >
> > (b) Acts in a way described in paragraph (a) of this subsection within three hundred (300) feet of a:
> >
> > > 1. Cemetery during a funeral or burial;
> > > 2. Funeral home during the viewing of a deceased person;
> > > 3. Funeral procession;
> > > 4. Funeral or memorial service; and
> >
> > (c) Knows that he or she is within three hundred (300) feet of an occasion described in paragraph (b) of this subsection.

2006 Ky. Laws Ch. 50 § 1(1), *codified as amended at* Ky. Rev. Stat. § 525.055(1).

> A person is guilty of disrupting meetings and processions in the first degree when, with intent to prevent or disrupt a funeral or burial, funeral home viewing of a deceased person, funeral procession, or funeral or memorial service for a deceased person, he or she does any act tending to obstruct or interfere with it physically or makes any utterance, gesture, or display designed to outrage the sensibilities of the group attending the occasion.

2006 Ky. Laws Ch. 50 § 3, *codified at* Ky. Rev. Stat. § 525.145(1).

> A person is guilty of interference with a funeral when he or she at any time on any day:
>
>> (a) Blocks, impedes, inhibits, or in any other manner obstructs or interferes with access into or from any building or parking lot of a building in which a funeral, wake, memorial service, or burial is being conducted, or any burial plot or the parking lot of the cemetery in which a funeral, wake, memorial service, or burial is being conducted;
>>
>> (b) Congregates, pickets, patrols, demonstrates, or enters on that portion of a public right-of-way or private property that is within three hundred (300) feet of an event specified in paragraph (a) of this subsection; or
>>
>> (c) Without authorization from the family of the deceased or person conducting the service, during a funeral, wake, memorial service, or burial:
>>
>>> 1. Sings, chants, whistles, shouts, yells, or uses a bullhorn, auto horn, sound amplification equipment, or other sounds or images observable to or within earshot of participants in the funeral, wake, memorial service, or burial; or
>>>
>>> 2. Distributes literature or any other item.

2006 Ky. Laws Ch. 50 § 5.

Roughly one month after the passage of these laws, Bart McQueary, a Kentucky resident who had joined these protests in the past and wanted to do so again, filed a lawsuit against Kentucky's Attorney General in federal court. *See* R.1. McQueary claimed that §§ 5(b) and 5(c) of the March 2006 Act, located in the third of the new laws, violated his First and Fourteenth Amendment rights in several ways. He wanted to "congregate[], picket[]" and "demonstrate[]" in a non-disruptive way on public rights-of-way within 300 feet of funerals, yet the 2006 Act appeared to prevent him from doing so. 2006 Ky. Laws Ch. 50 § 5(b). He wanted to make sounds and display images "observable to or within earshot of" funerals without permission from the family of the deceased and without disrupting the funeral, yet the 2006 Act appeared to prevent him from doing so. 2006 Ky. Laws Ch. 50 § 5(c). And he wished to "distribute[] literature" during his funeral protests, yet the 2006 Act appeared to prohibit him from doing so. 2006 Ky. Laws Ch. 50 § 5(c).

McQueary asked the district court to declare §§ 5(b) and 5(c) unconstitutional on their face and to enjoin their enforcement.

In September 2006, the district court preliminarily enjoined enforcement of §§ 5(b) and 5(c), finding it likely that the provisions were unconstitutionally overbroad. *See McQueary v. Stumbo* (*McQueary I*), 453 F. Supp. 2d 975, 997 (E.D. Ky. 2006). Six months later, in March 2007, the Kentucky legislature repealed these two subsections of the 2006 Act. *See* 2007 Ky. Laws Ch. 107 § 3.

After Kentucky repealed the challenged provisions, the district court dismissed the lawsuit as moot. *See McQueary v. Conway* (*McQueary II*), 634 F. Supp. 2d 821, 830 (E.D. Ky. 2009). In the same order, the court denied McQueary's request for attorney's fees. The court reasoned that McQueary did not directly benefit from the preliminary injunction because the central premise of its likelihood-of-success conclusion—overbreadth—did not necessarily establish that McQueary could picket the way he wanted to. *See id.* at 832–33. And because McQueary did not challenge other provisions of the 2006 Act prohibiting "violent, tumultuous, or threatening behavior" near funerals, Ky. Rev. Stat. Ann. § 525.055, the court thought it likely that, even after the court's preliminary injunction and the legislature's repeal of the challenged statutes, McQueary would not be able to engage in the funeral protests, *McQueary II*, 634 F. Supp. 2d at 833. McQueary appeals the court's rejection of his request for fees.

## II.

In trying to resolve the thorny questions raised by McQueary's appeal—whether or when the winner of a preliminary injunction may be treated as a "prevailing party" entitled to attorney's fees—a few basics are in order. There is no common law right to attorney's fees. Under the "American Rule," the "general practice" is not to award fees to prevailing parties "absent explicit statutory authority." *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 602 (2001). Under § 1988, as under several other fee-shifting statutes, Congress has explicitly empowered the courts to grant fees to parties who win § 1983 actions, among other civil rights actions:

> In any action or proceeding to enforce a provision of . . . [§] 1983 . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. . . .

42 U.S.C. § 1988(b); *see, e.g.*, *id.* § 3613(c)(2) (authorizing fee awards to the "prevailing party" in Fair Housing Amendments Act cases); *id.* § 12205 (same in Americans with Disabilities Act cases); *id.* § 2000e-5(k) (same in Civil Rights Act cases); *id.* § 1973l(e) (same in Voting Rights Act cases).

"[P]revailing party" is a "legal term of art," *Buckhannon*, 532 U.S. at 603, one that two recent decisions of the Supreme Court help to define. In *Buckhannon*, the plaintiff sought an injunction barring enforcement of a West Virginia statute and obtained a court-ordered preliminary injunction, though one to which West Virginia consented. *See id.* at 601. Two months after the district court rejected the State's sovereign immunity defense and one month after it denied the State's motion for summary judgment, the State repealed the statute, after which the district court dismissed the case as moot and denied the plaintiff's request for attorney's fees. *See id.* The Supreme Court affirmed the denial of fees, rejecting the "catalyst theory" for awarding fees, under which a plaintiff "prevailed" if he "achieve[d] the desired result because the lawsuit brought about a voluntary change in the defendant's conduct," such as a legislative repeal of a challenged statutory provision. *Id.* at 601–02. That theory, the Court reasoned, overlooks the legal reality that "prevailing party" covers only parties "in whose favor a judgment is rendered." *Id.* at 603 (internal quotation marks omitted). A defendant's voluntary change, even one precipitated by litigation, does not amount to "a court-ordered change in the legal relationship" between the plaintiff and defendant, as required to establish prevailing-party status. *Id.* at 604.

In *Sole v. Wyner*, 551 U.S. 74, 86 (2007), the Court established that the "court-ordered change in the legal relationship" between a plaintiff and defendant must be "enduring" and irrevocable. *Id.* That did not happen in *Sole* because the trial court dissolved the preliminary injunction it entered in favor of the claimant. A preliminary injunction, the Court held, does not establish prevailing-party status if it is "reversed, dissolved, or otherwise undone by the final decision in the same case," because § 1988 requires lasting relief, not the temporary, "fleeting success" such an injunction represents. *Id.* at 83; *see also id.* at 82 n.3. *Sole*, however, reserved the question presented here: "whether, in the absence

of a final decision on the merits . . . , success in gaining a preliminary injunction may sometimes warrant an award of counsel fees." *Id.* at 86. *See also Hewitt v. Helms*, 482 U.S. 755, 760 (1987) (rejecting fee request for "interlocutory" victory and explaining that "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail").

After *Buckhannon* but before *Sole*, our court considered whether the winner of a preliminary injunction was a "prevailing party." In *Dubuc v. Green Oak Township*, 312 F.3d 736 (6th Cir. 2002), a landowner filed a lawsuit against a township, charging the township with refusing to permit him to divide his lot in retaliation for his exercise of free-speech rights. Early in the lawsuit, the claimant obtained a preliminary injunction ordering the township to issue him a temporary certificate of occupancy as long as he complied with seven conditions. *Id.* at 753. The district court denied the request for "interim fees," and we affirmed. *See id.* at 753–54. In the context of a preliminary injunction, we reasoned, "there is only prevailing party status if the injunction represents 'an unambiguous indication of probable success on the merits, and not merely a maintenance of the status quo ordered because the balance of equities greatly favors the plaintiff.'" *Id.* at 753 (quoting *Webster v. Sowders*, 846 F.2d 1032, 1036 (6th Cir. 1988)). Because the injunction was not a "clear victory" for the claimant and was issued only in connection with several "conditions" imposed on the claimant, *Dubuc* upheld the district court's denial of fees. *Id.* at 754. The claimant's objective in the lawsuit, we concluded, was not to obtain a temporary certificate of occupancy, which is all that the preliminary injunction provided, but to obtain damages for alleged violations of his constitutional rights, which the court ultimately denied. *Id.* (Because *Dubuc* predates *Sole*, the court never addressed a more basic reason for denying that particular fee request: A claimant may not obtain interim attorney's fees for a preliminary injunction that is later dissolved. *See Sole*, 551 U.S. at 83.)

There are two more threads to the prevailing-party inquiry. One, to be a prevailing party, the plaintiff must obtain a "material" change in the legal relationship between himself and the defendant. *Sole*, 551 U.S. at 82, 86 (internal quotation marks and modifications omitted). A material change "directly benefit[s]" a plaintiff by modifying the defendant's behavior toward him. *Farrar v. Hobby*, 506 U.S. 103, 111 (1992); *see also Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989). Absent a direct

benefit, the plaintiff achieves only a symbolic victory, which § 1988(b) does not compensate. *See Farrar*, 506 U.S. at 113; *Tex. State Teachers Ass'n*, 489 U.S. at 792.

Two, the idea behind § 1988 is to award fees to deserving parties, not to generate "satellite" disputes over fees, *City of Burlington v. Dague*, 505 U.S. 557, 566 (1992); *see Buckhannon*, 532 U.S. at 610, which prompt "a second major litigation," *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). In assessing fee requests, the Court thus tends to eschew fact-based and speculative inquiries into why government bodies altered their conduct because they (1) tend to "distract[] . . . from," not further, § 1988's goal of encouraging adequate representation for civil rights plaintiffs, *Tex. State Teachers Ass'n*, 489 U.S. at 791, and (2) waste scarce judicial resources on questions "which [are] almost impossible to answer," *id.*; *see Dague*, 505 U.S. at 566.

That is all well and good. But none of this readily resolves today's case: McQueary does not invoke the "catalyst" theory; he did not ultimately lose on the merits; the preliminary injunction, as we will explain shortly, materially changed the relationship between the parties; and the preliminary injunction turned at least in part on the district court's assessment of the merits. Keeping in mind the Court's admonishment that fee inquiries should not generate satellite litigation, are there any other considerations that might clarify the inquiry? Several possibilities come to mind:

\* Perhaps, in view of the nature of a *preliminary* injunction, success on this type of interim relief *never* suffices. The statute after all refers to "the" prevailing party, not "a" prevailing party, 42 U.S.C. § 1988(b), suggesting that the only court-ordered change in the legal relationship between the parties that matters should be a lasting one, namely the change that culminates in a *final* judgment. Otherwise, individuals *and* States—both "prevailing" parties at times who "may" obtain fees—might seek fees for all manner of interim victories whenever for one reason or another the case does not proceed to final judgment. *Cf. Hewitt*, 482 U.S. at 760 (surviving a motion to dismiss "is not the stuff of which legal victories are made"). Adding force to the idea that a "preliminary" victor is never a prevailing party is this reality: Our review of a preliminary injunction ruling, even one that turns on the merits and even one that is resolved through a published opinion, is not binding on the panel that reviews the ultimate final injunction decision. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390,

395 (1981); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007); *Smith Wholesale Co., Inc. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 873 n.13 (6th Cir. 2007).

But this approach, clear as it might be, fails to account for fact patterns in which the claimant receives everything it asked for in the lawsuit, and all that moots the case is court-ordered success and the passage of time. When protesters seek an injunction to exercise their First Amendment rights at a specific time and place—say to demonstrate at a Saturday parade—a preliminary injunction will give them all the court-ordered relief they need and the end of the parade will moot the case. In what way are such claimants not prevailing parties? We think they are. *See Young v. City of Chicago*, 202 F.3d 1000, 1000 (7th Cir. 2000) (awarding fees to protestors who obtained a preliminary injunction to protest at the 1996 Democratic National Convention, which was the only relief sought). The same is true of a government employee who seeks to exclude an unconstitutionally obtained report from an administrative hearing and obtains a preliminary injunction that irrevocably excludes the report. *See Watson v. County of Riverside*, 300 F.3d 1092, 1095–96 (9th Cir. 2002). So also for a plaintiff who seeks to delay enforcement of a statute until a certain event occurs—say a scheduled public referendum—and the preliminary injunction brings about that result. *Cf. Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 493 (D.C. Cir. 2003).

Not all preliminary injunctions, as these examples show, have merely a catalytic effect. The defendants in these cases did not voluntarily change their conduct. An immediately enforceable preliminary injunction compelled them to. And in each instance, the plaintiffs obtained all of the relief they requested once the preliminary injunction served its purpose. *See N. Cheyenne Tribe v. Jackson*, 433 F.3d 1083, 1086 (8th Cir. 2006); *Watson*, 300 F.3d at 1096.

The plaintiffs in all of these cases, it is true, might have avoided the "preliminary" label attached to their victories by asking the courts to convert their motions for a preliminary injunction into motions for a final injunction. *See* Fed. R. Civ. P. 65(a)(2). Yet Rule 65 is not the Rosetta Stone to prevailing-party inquiries. A district court may, but it does not have to, grant Rule 65 requests, and nothing about the nature of the prevailing-party inquiry suggests that it should turn on whether a district court happens to embrace this

administrative streamlining device.  In the final analysis, the *preliminary* nature of the relief does not by itself provide a ground for *never* granting fees.

      * Perhaps preliminary-injunction winners are never eligible for fees for a *different* reason.  In *Sole*, the Court held that a preliminary injunction does not establish prevailing-party status if it is "reversed, dissolved, or otherwise undone by the final decision in the same case."  551 U.S. at 83.  When a case becomes moot, courts often vacate their earlier rulings on the theory that a ruling should not stand when the party opposing it is deprived of a chance to obtain a final ruling on the issue or to seek appellate review of it—due to events outside of the party's control, such as the defendant's voluntary cessation of conduct.  *See Alvarez v. Smith*, 558 U.S. ___, 130 S. Ct. 576, 581 (2009); *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40 (1950); *cf. U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1093–94 (9th Cir. 2010) (collecting cases holding that preliminary injunctions automatically dissolve upon final judgment).

      The *Munsingwear* doctrine suggests a potentially straightforward approach to the fees question:  *Sole* says that "dissolved" or "otherwise undone" preliminary injunctions do not warrant fees; mootness generally requires a court to vacate its earlier rulings, including any preliminary injunction granted in the case; fees for preliminary injunctions therefore are not permitted under *Sole*.  But this approach again fails to account for the instances in which a party has prevailed by every measure of victory, as illustrated above.  The *Munsingwear* rule, moreover, is not as clear as day:  It has exceptions of its own, *see, e.g.*, *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24 (1994) (*Munsingwear* does not apply to voluntary settlements), and vexing issues often arise over whether a case is moot in the first place, *see, e.g.*, *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (a defendant's voluntary change in conduct moots a case only if it is "absolutely clear" alleged wrongdoing is unlikely to recur); *Honig v. Doe*, 484 U.S. 305, 318 (1988) (a case avoids mootness if "capable of repetition, yet evading review").  All of these exceptions have little to do with the status of a party's victory, precluding us from saying that preliminary-injunction winners are *never* eligible for prevailing-party status on this basis alone.

\* Perhaps instead preliminary-injunction winners are *always* eligible for fees. *Buckhannon* says that "a court-ordered change in the legal relationship" between the plaintiff and defendant suffices to establish prevailing-party status, 532 U.S. at 604, and the granting of a preliminary injunction assuredly changes the legal relationship between the parties, permitting the claimant to do something that the defendant previously resisted. Rather than doing too little, however, this approach does too much. Some preliminary injunctions have nothing to do with the merits, offering no insight into whether one party or the other will prevail at the end of the case. Some initial injunctions, sometimes called stay-put or status quo injunctions, turn more on the grave risks of irreparable harm to one party or to the public interest than on the legal virtues of the parties' positions. *See Webster v. Sowders*, 846 F.2d 1032, 1036 (6th Cir. 1988) (denying fees to a plaintiff who obtained an injunction "because the balance of the equities greatly favor[ed]" maintaining "the status quo").

Several courts have rejected fee requests for obtaining such injunctions. *See Dearmore v. City of Garland*, 519 F.3d 517, 524 (5th Cir. 2008) (granting fees only if the claimant obtains "an unambiguous indication of probable success on the merits"); *N. Cheyenne Tribe v. Jackson*, 433 F.3d 1083, 1086 (8th Cir. 2006) (denying fees where injunction "granted only interim relief that preserved the status quo"); *Thomas*, 330 F.3d at 493 (denying fees where injunction "merely preserved the status quo"); *John T. ex rel. Paul T. v. Del. County Intermediate Unit*, 318 F.3d 545, 558 (3d Cir. 2003) (denying fees where injunction was "not based on the merits of [the plaintiff's] claims"); *Race v. Toledo-Davila*, 291 F.3d 857, 858–59 (1st Cir. 2002) (denying fees where injunction merely safeguarded claimant's rights during the litigation). No court to our knowledge holds that the victors of such holding-pattern injunctions and nothing more automatically receive fees, though one court comes close. *Cf. Richard S. v. Dep't of Developmental Servs. of Cal.*, 317 F.3d 1080, 1088–89 (9th Cir. 2003).

A similar defect defeats a related intuition, permitting fees whenever the nature of the victory is one that Congress has permitted the losing party to appeal. That would be true of final judgments, *see* 28 U.S.C. § 1291, *and* of the granting or the denial of preliminary injunctions, *see* 28 U.S.C. § 1292(a). But that rule, too, picks up orders that have nothing to do with success on the merits. Even aside from the stay-put injunctions identified above, it would extend to class certification orders, which Congress has permitted parties

immediately to appeal (with the permission of the court of appeals).  *See* Fed. R. Civ. P. 23(f).  "A procedural victory that may be a way station to utter substantive defeat creates no right to fees."  *Richardson v. Penfold*, 900 F.2d 116, 119 (7th Cir. 1990); *see Hardt v. Reliance Standard Life Ins. Co.*, No. 09-448, 560 U.S. ___, slip op. at 11–12 (May 24, 2010) (holding that "purely procedural victor[ies]" do not qualify for fees even under standards "less stringent" than the prevailing-party requirement).

All of this leaves us with a contextual and case-specific inquiry, one that does not permit us to say that preliminary-injunction winners always are, or never are, "prevailing parties."  In the aftermath of *Buckhannon* and *Sole*, however, we can say that the "preliminary" nature of the relief—together with the requirement that a prevailing-party victory must create a lasting change in the legal relationship between the parties and not merely "catalyze" the defendant to voluntary action—will generally counsel against fees in the context of preliminary injunctions.  With these considerations in mind, we turn to the district court's explanation for denying McQueary's fee request.

*First*, the court denied fees on the ground that McQueary did not "directly benefit[]" from the 2006 preliminary injunction.  That is not so, however.  Before the injunction, Kentucky could prosecute McQueary for holding a large, controversial sign on a public sidewalk near a funeral, *see* 2006 Ky. Laws Ch. 50 §§ 5(b), (c); it could prosecute him for quietly distributing anti-military literature to mourners entering a funeral home, *see id.* § 5(c); and it could prosecute him for singing songs of protest that the funeral party could hear but that did not disrupt the funeral, *see id.*  After the injunction, McQueary could do all of these things without fear of prosecution under these laws.  No one disputes that Kentucky would have prosecuted McQueary in the absence of an injunction, establishing that this court-ordered freedom materially changed Kentucky's behavior toward him—at least temporarily.  *See DiLaura v. Township of Ann Arbor*, 471 F.3d 660, 670 (6th Cir. 2006); *Berger v. City of Mayfield Heights*, 265 F.3d 399, 406 (6th Cir. 2001).

*Second*, in explaining its "direct benefit" ruling, the court added that *other* Kentucky laws would prohibit McQueary's proposed protests.  But why should we assess McQueary's prevailing-party status based on statutes he never challenged?  That is not the norm.  In considering whether a claimant directly benefitted from litigation, we usually measure the

plaintiff's gain based on the relief requested in his complaint, not based on the practical significance of the relief obtained. *See Farrar*, 506 U.S. at 111–12; *Hewitt*, 482 U.S. at 760–61; *DiLaura*, 471 F.3d at 670. Even a single dollar in nominal damages, the pinnacle of worthless relief, qualifies as a direct benefit. *See Farrar*, 506 U.S. at 112. In this instance, McQueary asked the district court to enjoin Kentucky from enforcing two provisions of Kentucky law, and the preliminary injunction temporarily did so. That the benefit came through a preliminary injunction may make a difference in the end to the fees request. But this aspect of the court's direct benefit analysis does not turn on that point: Its analysis defeats McQueary's request for fees no matter whether the court's order of relief comes in the form of a preliminary injunction or a final one.

There is a good reason for focusing on the relief the plaintiff requested, not the additional relief he might have requested. "A request for attorney's fees should not result in a second major litigation," *Hensley*, 461 U.S. at 437, yet an assessment of the practical significance of the relief obtained almost always will lead to collateral litigation over the relevance of these other laws. *Cf. Buckhannon*, 532 U.S. at 609–10 (raising similar concerns about looking outside the litigation to assess whether a plaintiff prevailed). To assess whether McQueary's proposed protests would violate other provisions of Kentucky law, the district court would need to develop a factual record defining the precise contours of McQueary's proposed "non-disruptive" protests. Would he block access to funeral homes' driveways and doorways? *See* Ky. Rev. Stat. Ann. § 525.155. What precisely would he chant, sing or shout near funerals and how loudly would he do so? When does a noise become so loud or a sign so offensive that it "prevent[s] or disrupt[s] a funeral"? *See id.* § 525.145. These factual inquiries are difficult in and of themselves, but they are virtually impossible when it comes to protests not yet undertaken, only anticipated.

All of this would be prelude to a difficult legal inquiry. The district court would have to decide whether, under the "facts" of this hypothetical protest, McQueary would violate any other provisions of Kentucky law that the Attorney General might uncover. And that would require the court to assess any constitutional challenges McQueary might have to those provisions. The possibility of prosecution under an additional unconstitutional statute after all could not undermine the practical significance of McQueary's success. To say that this would create a costly side show divorced from the merits of the underlying

dispute is an understatement. To say that it would lead to district court orders more in the nature of advisory opinions than fee determinations is an unvarnished reality. *Cf. Hall v. Beals*, 396 U.S. 45, 48 (1969).

In defending the district court's reasoning, the Attorney General argues that we owe deference to the court's finding that other provisions—restrictions on "violent, tumultuous, or threatening behavior" and "hazardous and physically offensive condition[s]" near funerals, Ky. Rev. Stat. Ann. § 525.055—"likely prohibit" McQueary's proposed, controversial activities. *McQueary II*, 634 F. Supp. 2d at 832. But the district court made no fact findings on this point. It issued the preliminary injunction and denied the fee request based on the pleadings, leaving us nothing to which we could defer. *Id.*; *McQueary I*, 453 F. Supp. 2d at 979.

Nor do we see any basis for concluding that McQueary's proposed protests would violate other, unchallenged aspects of Kentucky law. McQueary alleges that he wants to protest "in a non-disruptive manner." R.1 ¶ 15; *see* R.1 ¶¶ 13–14. To deny the request for fees on the ground that his conduct would violate valid restrictions on "violent, tumultuous, or threatening behavior," we would have to do one of two things: assume that McQueary's pleadings misrepresent how he planned to behave or infer that non-disruptive protests involve threatening behavior. Either approach would alter our normal practice of accepting a complaint's factual allegations as true and of drawing all reasonable inferences in the plaintiff's favor when ruling without an evidentiary record. *Cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (following that rule when assessing standing); *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008) (following that rule in evaluating a motion to dismiss).

The Attorney General's argument is unavailing for another reason. A plaintiff crosses the threshold to "prevailing party" status by succeeding on a single claim, even if he loses on several others and even if that limited success does not grant him the "primary relief" he sought. *Tex. State Teachers Ass'n*, 489 U.S. at 790–91; *see also Farrar*, 506 U.S. at 111. The significance of the relief obtained goes only to the amount of fees. *Eckerhart*, 461 U.S. at 434–35. Had McQueary challenged all of Kentucky's funeral-protest prohibitions as applied to him, but succeeded only in having §§ 5(b) and 5(c) enjoined as

overbroad, he would still qualify as a prevailing party. The Attorney General offers no justification—and we see none—for denying the fees request *in toto* because McQueary chose to challenge fewer rather than more provisions of Kentucky law.

*Third*, the court justified its fee denial on the ground that the injunction was premised on overbreadth grounds, not on the ground that McQueary's proposed communications were constitutionally protected. This, too, is a theory that has nothing to do with the preliminary nature of the court's relief; it would apply equally to permanent injunctions. The theory does not work in either setting. When a plaintiff obtains the *greater* victory (striking a statute in all of its applications, *i.e.*, on its face) rather than the more narrow victory (striking the statute as applied only to his communications), he does not become *less* eligible for fees. "Prevailing parties" are winning parties, and a party who succeeds in showing that a law cannot be enforced in *any* of its applications due to overbreadth concerns is the epitome of a prevailing party—for he has won not just on behalf of himself but on behalf of many others as well. One of the justifications for § 1988 is that it allows individual citizens to act as "private attorney[s] general," *Tex. State Teachers Ass'n*, 489 U.S. at 793, making it odd to say that the litigant who truly acts on behalf of other citizens by bringing an overbreadth challenge is *not* entitled to fees.

Even if we focus on the effect of an overbreadth ruling solely with respect to McQueary, at any rate, how has he not prevailed? Whether premised on overbreadth grounds or as-applied grounds, the effect is the same: The injunction bars Kentucky from prosecuting McQueary under §§ 5(b) and 5(c) and thus alters the legal relationship between McQueary and the State.

At least four circuits agree that plaintiffs who prevail on overbreadth grounds may collect attorney's fees. *See Ways v. City of Lincoln*, 274 F.3d 514, 520 (8th Cir. 2001); *Phelps v. Hamilton*, 120 F.3d 1126, 1130 (10th Cir. 1997) (vagueness challenge); *Nash v. Chandler*, 848 F.2d 567, 572 (5th Cir. 1988); *Solomon v. City of Gainesville*, 796 F.2d 1464, 1466–67 (11th Cir. 1986). No circuit to our knowledge disagrees, and we are not prepared to be the first.

*Fourth*, the court briefly justified its denial of fees on an alternative theory—that "special circumstances" warrant the denial of fees. But the court never explained what made

the circumstances surrounding this litigation "special" and thus has given us no basis for assessing this theory for denying fees.

The "special circumstances" exception apparently flows from *dicta* in *Hensley v. Eckerhart*, which says that district courts may deny fees to a prevailing party "in 'special circumstances' when an award would be 'unjust.'" 461 U.S. at 446. We have acknowledged the doctrine on several occasions and have observed that a non-prevailing party must make a "strong showing" to establish special circumstances. *Deja Vu v. Metro. Gov't of Nashville and Davidson County*, 421 F.3d 417, 422 (6th Cir. 2005). But we have never (to our knowledge) found a "special circumstance" justifying the denial of fees. *Id.* (later developments in the law, which would prevent a party from prevailing if case were re-litigated at time of fees determination, are not special circumstances); *see Wikol v. Birmingham Pub. Schs. Bd. of Educ.*, 360 F.3d 604, 611 (6th Cir. 2004) (a prevailing party's "bad acts" during course of litigation are not a special circumstance); *Morscott, Inc. v. City of Cleveland*, 936 F.2d 271, 273 (6th Cir. 1991) (a defendant's good faith in enacting challenged provision is not a special circumstance).

It is "extremely rare" to deny fees based on special circumstances in other circuits as well. *Saint John's Organic Farm v. Gem County Mosquito Abatement Dist.*, 574 F.3d 1054, 1064 (9th Cir. 2009) (internal quotation marks omitted); *but see Bateson v. Geisse*, 857 F.2d 1300, 1306 (9th Cir. 1988) (denying fees where court had to "engage in extensive supplemental research" because of prevailing party's woefully inadequate briefing). On remand, the district court remains free to explain why special circumstances exist here.

So far, we have explained why the district court's explanations for denying fees in this difficult case do not hold up. Yet we have not explained whether McQueary should collect fees—and with good reason. That question initially is for the district court, which had a ring-side view of the underlying proceedings, which is in the best position to make an initial cut at whether McQueary deserves fees for this preliminary injunction and which is given considerable deference over most aspects of the fees inquiry. *Buckhannon*, *Sole* and *Dubuc* make clear, we think, that, when a claimant wins a preliminary injunction and nothing more, that usually will not suffice to obtain fees under § 1988. What remains unclear is

when the occasional exceptions to that rule should apply, a contextual and case-specific inquiry that we ask the district court to undertake in the first instance.

III.

For these reasons, we reverse and remand for further proceedings.